MATTER OF SALVIEJO

In Deportation Proceedings

A-19173484

*Decided by Board April 17, 1970*

Application for a waiver of the visa requirements under section 211(b) of the Immigration and Nationality Act, was properly denied since respondent, a native and citizen of the Philippines, who lived from August 1947 until November 1958 in Guam where he held various jobs as a laborer, sales clerk, stock clerk, storekeeper and gas station attendant, is classifiable as a contract laborer and not entitled to the presumption of lawful permanent residence under 8 CFR 4.2(j) [now 8 CFR 101.1(i)]; and further, since his actual place of residence from the time he left Guam in 1958 until he entered the United States in 1968 (with the exception of 11 months spent in Viet Nam) was in the Philippines, where he acquired a home and farm which he still owns, such residence was not temporary so as to constitute at the time of his entry to the United States in 1968 a return from a temporary visit abroad.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Visitor—
remained longer.

ON BEHALF OF RESPONDENT:
William C. Wunsch, Esquire
351 California Street
San Francisco, California 94104
(Brief filed)
Also of counsel:
Normal Stiller, Esquire
995 Market Street
San Francisco, California 94103

ON BEHALF OF SERVICE:
Jay Segal
Trial Attorney
(Brief filed)

The case comes forward on appeal from the order of the special inquiry officer denying respondent's application pursuant to section 211(b) of the Immigration and Nationality Act[1] for a

_____

[1] Section 211(b) of the Act, 8 U.S.C. 1181(b) provides:

Notwithstanding the provisions of section 212(a)(20) of this Act in such cases or in such classes of cases and under such conditions as may be by regulations prescribed, returning resident immigrants, defined in section

waiver, *nunc pro tunc*, of the documentary requirements for admission as set forth in section 212(a) (20)[2] of the Act. Respondent was granted voluntary departure in lieu of deportation, with a further order that if he failed to depart within 30 days, he be deported to the Republic of the Philippines on the charge contained in the order to show cause.

The respondent is a 49-year-old male alien, a native and citizen of the Republic of the Philippines, who was last admitted to the United States at Seattle, Washington on March 9, 1968, being then admitted as a visitor for pleasure. He did not leave within the time required and at the deportation hearing he was found deportable as charged.

The respondent asserts that his entry into the United States on March 9, 1968 was not an entry as a visitor but rather as a returning resident immigrant and that he was entitled to the waiver applied for. A returning resident immigrant is defined in section 101(a) (27) (B), of the Act, 8 U.S.C. 1101(a) (27) (B).[3] Under this provision of law an alien to be eligible for a waiver under section 211(b) of the Act must establish first that he was admitted to the United States for permanent residence, and second that he is returning from a temporary visit abroad. The special inquiry officer did not make a definitive finding as to the first requirement but denied the waiver on the basis that the respondent was not returning from a temporary visit abroad when he entered the United States on March 9, 1968. We will consider both questions.

Respondent lived and worked in Guam from August 1947 until November 1958. He contends that under the provisions of 8 CFR

---

101(a) (27) (B), who are otherwise admissible may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, reentry permit or other documentation.

[2] Section 212(a) (20) of the Act, 8 U.S.C. 1182(a) (20) provides:

(a) Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:  .

(20) . . . any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . .

[3] Section 101: (a) As used in this Act— * * * (27) The term "special immigrant" means— * * * (B) an immigrant lawfully admitted for permanent residence, who is returning from a temporary visit abroad.

4.2(j)[4] (now 8 CFR 101.1(i)), he acquired permanent residence status by reason of his residence in Guam. We will later consider this contention at length. Assuming arguendo that the respondent was a permanent resident, was he returning from a temporary visit abroad when he entered the United States on March 9, 1968? We agree that the special inquiry officer that he was not. These are the pertinent facts.

During respondent's eleven years in Guam he returned to the Philippines on three occasions, each time for a month's vacation. He was married at that time and his wife and their two children resided in the Philippines. He last returned to the Philippines in November 1958 on a 30 day reappointment leave. The record is not clear as to whether his job in Guam, which was that of a sales-clerk at the time he left, had been terminated prior to or after he left, but the fact is that he did not have a job in Guam to which he could return. He testified that he made several attempts during the next few years to obtain employment in Guam, by contacting the Army personnel authorities in the Philippines and by corresponding with two friends of his who had remained in Guam. He also wrote to the Army personnel office in Guam. He was unsuccessful. There is no evidence he made any further attempts after 1962. In the meantime he separated from his wife and went through a marriage ceremony with another woman, whom he considers his wife, although he did not obtain a divorce from his first wife until March 1969, in Reno, Nevada.

After a month after respondent returned to the Philippines in November 1958 he went to work assisting his brother-in-law who is a tinsmith. He then operated a handicraft store from 1962 to 1964. He worked in Viet Nam, in what capacity is not shown, for 11 months in 1966 and 1967. Respondent testified that he ac-

---

[4] 8 CFR 4.2(j) provided (effective January 31, 1955, Federal Register, December 8, 1954):

*Presumption of lawful admission.* An alien of any of the following described classes shall be presumed to have been lawfully admitted for permanent residence within the meaning of the Immigration and Nationality Act (even though no record of his admission can be found, except as otherwise provided in this part)....

(j) *Aliens admitted to Guam.* (1) An alien who establishes that he was admitted to Guam prior to December 24, 1952, by records, such as service records subsequent to June 15, 1952, records of Guamanian Immigration Service, records of the Navy or Air Force, or records of contractors of those agencies, *other than as a contract laborer,* [emphasis supplied] was not otherwise excludable under the Act of February 5, 1917, as amended, and who continued to reside in Guam until December 24, 1952, regardless of the period of time for which admitted.

quired a house and a farm in the Philippines which he still owns (Tr. of Hearing, p. 42). With the exception of the 11 months spent in Viet Nam, his actual place of residence for the approximate nine and one-half years from the time he left Guam until he entered the United States as a visitor, was in the Philippines.

At the time the respondent applied for a visitor's visa he submitted an affidavit to the American Consul at Manila, in which he stated that he did not desire to immigrate to the United States but sought only a tourist's visa for a visit of not more than two months and that he had no intention of remaining in the United States indefinitely or permanently for any reason whatsoever. He also swore that he would not seek employment or remain longer than permitted by his tourist's visa and he would not apply for adjustment of status to any other category.

In *U.S. ex rel. Alther et al.* v. *McCandless*, 46 F.2d 288 (3 Cir., 1931), the alien, previously admitted for permanent residence, returned to the United States on a visitor's visa after an absence of eight and one-half years. Although he had some property and business connections in the United States and had obtained the draft board's permission to leave the country, the court held that he was not returning from a temporary visit abroad. The court stated that his obtaining a visitor's visa from the American Consul in Switzerland was inconsistent with his claim to be a returning resident.[5] This point is particularly apropos to the case before us because respondent testified (Tr. of Hearing, p. 73) that he was aware as early as December 1952 that because of his residence in Guam he could be considered a permanent resident of the United States.

We held in *Matter of G——*, 8 I. & N. Dec. 249 (BIA, 1959), that a permanent resident alien who was absent for two years should be granted a waiver under section 211(b) of the Act because he was detained by the German authorities for that period of time and his absence was thus involuntary.

In *U.S. ex rel. Polymeris et al.* v. *Trudell*, 49 F.2d 730 (2 Cir., 1931), affirmed 284 U.S. 279 (1932), the immigrants (mother and daughter) were absent for seven years. Their visit had been somewhat extended first by the sickness and death of the mother's husband, by the necessity for remaining to settle his estate, and then by the delay occasioned by their persistent though fruitless attempts to obtain return permits. The court stated at page 732:

What is a temporary visit cannot be defined in terms of elapsed time

---

[5] See also *U.S. ex rel. Thomas* v. *Day*, 29 F.2d 485 (2 Cir., 1928).

alone, when it is of such duration that its temporary character may reasonably be questioned. Then the intention of the visitor, when it can be determined, will control.[6]

In the *Polymeris* case the court found that the aliens' unflagging intent to return to the United States was sown by their unremitting attempts during the last five years of their absence to return.[7] These facts distinguish it from the instant case in which for all practical purposes the alien had abandoned after several years any real intent to return to Guam.[8]

In *Tejeda* v. *INS*, 346 F.2d 389 (9 Cir., 1965), the immigrant was absent for sixteen years and then returned with a visitor's visa. He had failed all during this time to pursue his right to return as a returning resident alien because of reliance on erroneous advice given him by a United States Consul. The court remanded the case, saying that the long period of absence and his obtaining a nonimmigrant visa would not preclude his being admitted as a returning resident alien if he had actually been misled by a government official.

In a most recent case, *Santos* v. *INS*, 421 F.2d 1303 (9 Cir., No. 23160, February 13, 1970), the court indicated that one factor to be considered in a section 211(b) waiver case is whether the immigrant who claims to be returning from a temporary visit abroad has any ties in the United States to which he is returning, such as a family, property, job or other links. In the instant case the respondent has no ties of any kind in Guam. The *Santos* case also involved a citizen of the Philippines who obtained permanent residence under 8 CFR 4.2(j) by reason of residence in Guam. The court stated that when Santos left Guam, taking with him all his worldly goods in a footlocker, this severed any and all connections he had with Guam.

We conclude from the facts in the instant case that respondent's residence of more than nine years in the Philippines after

---

[6] Citing *U.S. ex rel Lesto* v. *Day*, 21 F.2d 307 (2 Cir., 1927), in which the court held that ordinarily the intention must be "to return within a period relatively short, fixed by some early event."

[7] See *Matter of Carpio*, A15848462 (BIA, 1968) (unreported), a similar case in which the alien's intent to return was clearly shown by his constant attempts to reenter the United States.

[8] Although the court in the *Polymeris* case found that the aliens were returning from a temporary visit abroad, they were excluded under section 13(a) of the Immigration Act of 1924 (8 U.S.C.A. 213(a)), since the Secretary of Labor did not admit them in his discretion under 8 U.S.C.A. 136(p), and neither presented an unexpired valid immigration visa or an unexpired valid permit to reenter in accordance with the regulations promulgated under section 13(b) of that Act.

leaving Guam cannot be considered a temporary visit, and we affirm the finding of the special inquiry officer that the respondent, when he entered the United States at Seattle on March 9, 1968, was not returning to the United States from a temporary visit abroad.

We turn our attention now to the question of whether respondent acquired the status of a permanent resident of the United States under 8 CFR 4.2(j) by reason of his residence in Guam. Under this section of law he would be presumed to be a permanent resident unless his work in Guam was that of a contract laborer.

He first went to work on Guam for a private employer, and his first job was as a laborer stacking lumber. He then sold beer and soft drinks at a post exchange owned by his employer. A few months later he went to work as a civilian for the United States Army, working in the post exchange. He was successively a salesclerk, sales and stock clerk, salesclerk-storekeeper, gas station attendant and finally a salesclerk. His salary ranged from $.35 an hour to a high of $.97 an hour.

In *Matter of C—Y—L*, 8 I. & N. Dec. 371 (BIA, 1959), we held that where a person intends employment in a supervisory or managerial capacity in a position for which he is occupationally qualified and is actually employed in this position, he is not classifiable as a contract laborer and is entitled to the presumption of lawful permanent residence accorded by 8 CFR 4.2(j) (now 8 CFR 101.1(i). In that case the alien was a cook.[9]

The various jobs performed by the respondent in the instant case were neither managerial nor supervisory and did not require such administrative and instructive responsibilities as would remove them from the category of being contract labor.[10]

We hold, therefore, that the application for a waiver of visa requirements under section 211(b) of the Act was properly denied on the basis that the respondent could not qualify as being a person admitted for permanent residence to the United States under CFR 4.2(j), and that his coming to the United States was not a returning resident immigrant returning from a temporary visit abroad. Accordingly, the appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

*Matter of C—Y—L—*, *supra*, discusses at length various occupations which can be considered as "contract labor" and others which cannot be so sidered.

[9] *Matter of C—Y—L—*, *supra*.