MATTER OF QUIJENCIO

In Deportation Proceedings

A-17862478

*Decided by Board September 26, 1974*

Respondent claimed lawful permanent resident status under 8 CFR 4.2(j), promulgated in 19 Fed. Reg. 8055 (December 8, 1954) effective January 3, 1955, (now 8 CFR 101.1(i), as an alien who was admitted to Guam prior to December 24, 1952. Even if respondent had attained such status he lost it by operation of law. Respondent could only qualify as a "returning resident immigrant" under section 101(a)(20) of the Immigration and Nationality Act if such status had not changed. Respondent's absence from the United States for 12 years between 1956 and 1968 effected such a change of status.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(20)]—Nonimmigrant—
—remained longer than permitted.

ON BEHALF OF RESPONDENT:  Robert O. Wells, Jr., Esquire
2801 Seattle First National Bank Building
Seattle, Washington 98154

In a decision dated March 13, 1969, the immigration judge found the respondent deportable as charged and ordered his deportation to the Republic of the Philippines. No appeal was taken from that decision.

Thereafter, the respondent moved that the proceedings be reopened in order to allow him to show that he had obtained lawful permanent resident status under 8 CFR 4.2(j), promulgated in 19 Fed. Reg. 8055 (December 8, 1954), effective January 3, 1955 (now 8 CFR 101.1(i)). At the reopened hearing, the immigration judge found that the respondent was entitled to a presumption of admission for permanent residence under 8 CFR 4.2(j), but he concluded that the respondent had lost such status by operation of law. He granted the respondent the privilege of departing voluntarily from the United States within 31 days in lieu of deportation. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a native and citizen of the Philippines. The record shows that he entered Guam in May 1950 to work for the Air Force as a civilian employee. His original employment was as a laborer, but after six months he was promoted to the position of warehouseman. Thereaf-

ter, he attended school and was further promoted to the position of clerk-typist.

The respondent held the position of clerk-typist until 1956 when he lost his job due to a reduction in force. After unsuccessfully searching for employment at other air bases, the respondent was transported back to the Philippines at the expense of the United States Government.

The respondent resided in the Philippines from 1956 until the end of 1968. He worked at various jobs, married a native and citizen of the Philippines, and had three children. The respondent did not return to the United States until December 1968, at which time he entered as a nonimmigrant visitor authorized to remain until February 4, 1969.

The respondent's wife and children continue to reside in the Philippines, as do his mother and his three sisters. The respondent's only close relative in the United States is a brother who is a naturalized citizen. The respondent has no other ties to the United States.

8 CFR 4.2(j) provided for a presumption of lawful admission for permanent residence for:

> An alien who establishes that he was admitted to Guam prior to December 24, 1952, by records, such as Service records subsequent to June 15, 1952, records of the Guamanian Immigration Service, records of the Navy or Air Force, or records of contractors of those agencies, other than as a contract laborer, was not otherwise excludable under the act of February 5, 1917, as amended, and who continued to reside in Guam until December 24, 1952, regardless of the period of time for which admitted.

The immigration judge concluded that under the tests set forth by us in *Matter of C—Y—L—*, 8 I. & N. Dec. 371 (BIA 1959), the respondent's status as a clerk-typist included certain mental demands which would exclude him from the contract labor category of section 3 of the Act of February 5, 1917. The accuracy of this conclusion is questionable, since the respondent was recruited by the Air Force as a civilian laborer, worked as a laborer for the first six months after his arrival, received promotion to a warehouseman only after a "survey" was conducted, and did not assume his duties as a clerk-typist until considerably after his original admission.

The determination as to whether the respondent entered Guam as a contract laborer depends on the precise nature and purpose of his original employment, matters which were not developed in the record. Without more information, we cannot reach a conclusion as to whether the respondent is entitled to the presumption of admission for lawful permanent residence contained in 8 CFR 4.2(j). Nevertheless, we find that a remand will be unnecessary, due to our conclusion that even if the respondent had acquired the presumption of lawful admission under 8 CFR 4.2(j), he would no longer have the status of a lawful permanent resident.

Section 101(a)(20) of the Act defines the term "lawfully admitted for

permanent residence" as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed.*" (Emphasis supplied.) Section 211(b) of the Act provides for a waiver of the documentary requirements for admission for one who can qualify as a "returning resident immigrant" as that term is defined in section 101(a)(27)(B). A "returning resident immigrant" is defined by section 101(a)(27)(B) as "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad."

The issue in this case is whether the respondent's status has "changed" within the meaning of section 101(a)(20) of the Act. The respondent was absent from the United States for 12 years. Without limiting the circumstances which may be found to effect a "change" in status, we conclude that one test as to whether the respondent has "changed" his status is whether he could have qualified as a "returning resident immigrant" upon his reentry into the United States in 1968 after his absence in the Philippines. It would be incongruous to have a situation where an alien could no longer qualify as a "returning resident immigrant," yet nevertheless could maintain that his status as a lawful permanent resident had not "changed" by virtue of his absence. *Compare Matter of Antolin,* 12 I. & N. Dec. 127 (BIA 1967), *with Santos v. INS,* 421 F.2d 1303 (C.A. 9, 1970), and *Matter of Salviejo,* 13 I. & N. Dec. 557 (BIA 1970).[1]

Factors which we use to determine whether an alien qualifies as a "returning resident immigrant" after a "temporary visit abroad" can thus be applied to determine whether the respondent in the present case has "changed" his status. Factors to be considered are (1) the duration of the alien's absence from the United States, (2) the location of the alien's family ties, property holdings, and job, and (3) the intention of the alien with respect to both the location of his actual home and the anticipated length of his excursion. *Matter of Castro,* 14 I. & N. Dec. 492 (BIA 1973).

The respondent resided in the Philippines for 12 years after leaving Guam. During this time he never returned to the United States, nor is there evidence that he intended to return, or that he intended his anticipated stay in the Philippines to be of short duration. His family

---

[1] Examples of other situations in which we have stated that status has been "changed" are: where an alien has his status adjusted from that of an immigrant to that of a nonimmigrant, *Matter of S—,* 6 I. & N. Dec. 392 (BIA 1954; A.G. 1955); *Matter of M—P—,* 9 I. & N. Dec. 747 (BIA 1962); where an alien leaves the United States under an order of exclusion or deportation, *Matter of Iqal,* 10 I. & N. Dec. 460 (BIA 1964); where an alien is involuntarily repatriated to a foreign country in accordance with law, *Matter of T—,* 6 I. & N. Dec. 778 (BIA 1955); where the alien was removed from the United States at his own request at Government expense, *Matter of Morcos,* 11 I. & N. Dec. 740 (BIA 1966).

ties, property holdings, and job were all in the Philippines; his only tie to the United States is his citizen brother. Assuming *arguendo* that the respondent was entitled to the presumption of lawful admission under 8 CFR 4.2(j), we conclude that his status has "changed" by virtue of his 12-year absence in the Philippines.

The respondent argues that he cannot be said to have intended to abandon his status as a lawful permanent resident because he was not even aware that he had attained that status until recently. The immigration judge, apparently relying on some of our language in *Matter of Antolin,* supra, stated that intent was immaterial to the issue of whether the respondent's status had changed. We believe that this statement requires some qualification.

The thrust of some of our language in *Matter of Antolin,* supra, and *Matter of Sias,* 11 I. & N. Dec. 171 (BIA 1965), where we cited section 101(a)(33) of the Act, was that intent was not relevant to determining change of status. Nevertheless, many decisions indicate that intent is one factor which should be considered in determining whether an alien has retained lawful permanent resident status. See e.g., *U.S. ex rel. Lesto* v. *Day,* 21 F.2d. 307 (C.A. 2, 1927); *Gamero* v. *INS,* 367 F.2d 123 (C.A. 9, 1966); *Santos* v. *INS,* supra; *Matter of Castro,* supra; *Matter of Montero,* 14 I. & N. Dec. 399 (BIA 1973); *Matter of Salviejo,* supra; *Matter of Vielma-Ortiz,* 11 I. & N. Dec. 414 (BIA 1965); *Matter of B—,* 9 I. & N. Dec. 211 (BIA 1961), rev'd on other grounds, *Barrese* v. *Ryan,* 203 F. Supp. 880 (D. Conn. 1962); *Matter of D—C—,* 3 I. & N. Dec. 519 (BIA 1949); *Matter of Guiot,* 14 I. & N. Dec. 393 (D.D. 1973).

The mere fact that the respondent alleges that he never had a specific intent to abandon his permanent resident status, however, does not establish that he had an affirmative intent to return to the United States after a temporary visit abroad. Moreover, the other factors in this case, such as duration of stay and ties, are overwhelming evidence of a "change" in status. See *Matter of Castro,* supra.

The respondent also contends that if he had known of his permanent resident status in 1956, he would not have returned to the Philippines, but rather would have remained in the United States. However, as we stated in *Matter of Antolin,* supra, we must determine the case on the facts before us, not upon speculation as to what might have happened under different circumstances.

We also reject the respondent's claim that the failure of the Government to inform him of his permanent resident status prevents the Government from denying him such status at the present time. In a somewhat analogous case, the United States Supreme Court recently rejected a petition for United States citizenship based on the Government's failure to apprise an alien of his right to naturalization. *INS* v. *Hibi,* 414 U.S. 5 (1973).

Finally, the respondent contends that the status of lawful permanent resident is comparable to that of citizenship, and therefore cannot be lost except upon a voluntary act of renunciation. The loss of lawful permanent resident status cannot be equated with the loss of citizenship. *Matter of Antolin*, supra; cf. *Rabang* v. *Boyd*, 353 U.S. 427 (1957); *Manlangit* v. *INS*, 488 F.2d 1073 (C.A. 4, 1973).

The result reached by the immigration judge was correct. The appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 31 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.