## MATTER OF DUNN

### In Deportation Proceedings

### A–8464157

*Decided by Board June 19, 1972*

(1) Although respondent, immediately following his refusal to comply with an order to report for induction into the armed forces in 1966, departed the United States and abandoned his permanent resident status, he was not relieved from the duty of complying with an order to report for induction in June 1968, notwithstanding he may not have been a permanent resident alien at that time.

(2) Respondent's deportability predicated on inadmissibility under section 212(a)(22) of the Immigration and Nationality Act on the ground he departed the United States to avoid training or service in the armed forces, is established by clear, convincing, and unequivocal evidence on the basis of his August 30, 1966, statement of refusal to comply with an order of the Selective Service Board to report for induction, his conviction for refusing to submit to induction, and his testimony to the effect he departed the United States in September 1966 to avoid induction.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]— Excludable at time of entry—no immigrant visa—section 212(a)(20) [8 U.S.C. 1182(a)(20)]

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Departed to avoid training or service in armed forces—section 212(a)(22) [8 U.S.C. 1182(a)(22)]

ON BEHALF OF RESPONDENT:
George C. Fisher, Esquire
400 Channing Avenue
Palo Alto, California 94302
(Brief filed)

ON BEHALF OF SERVICE:
Bernard J. Hornbach
Trial Attorney
(Brief filed)

This is an appeal from an order of the special inquiry officer finding the respondent deportable as charged in the order to show cause. His application for voluntary departure was denied and an order of deportation entered. The appeal will be dismissed.

The respondent, a 27-year-old native and citizen of Canada, was admitted to the United States for permanent residence at Detroit, Michigan on April 8, 1953. His Selective Service Board ordered him

to report for induction on September 28, 1966. He informed the Board on August 30, 1966 that he would not comply with the order because he felt that "conscription is amoral and totally unjustified" (Exh. 4). He departed for Canada on September 2, 1966.

The respondent appeared at the office of the Immigration and Naturalization Service at Vancouver, B.C., Canada on September 6, 1966 and advised that he was abandoning his permanent residence in the United States. He surrendered his alien registration receipt card (Form I–151). Following the surrender of his alien registration receipt card, the respondent returned to the United States on several occasions. He was indicted in the United States District Court for the Northern District of California for violation of Title 50, Appendix U.S.C. section 462 - Refused to Submit to Induction. He was convicted on September 6, 1968 upon a plea of guilty and sentenced to imprisonment for a period of two years, 18 months of which were suspended. The respondent served six months at McNeil Island Penitentiary and thereafter was placed on probation for 18 months. He testified that he was last admitted to the United States as a visitor in January of 1971 (p. 26).

The order to show cause charges that the respondent is subject to deportation in that at the time of entry he was excludable under section 212(a)(20) of the Immigration and Nationality Act as an immigrant not in possession of a valid unexpired immigrant visa and under section 212(a)(22) of the Act as an alien who departed from or remained outside of the United States to avoid or evade training or service in the armed forces. The special inquiry officer found the respondent deportable on both charges.

The special inquiry officer concludes that the respondent abandoned his permanent residence when he departed from the United States in 1966 to avoid training or service in the armed forces of this country (p. 3, special inquiry officer's opinion). The record establishes, however, that the respondent was convicted in September of 1968 for refusal to submit to induction on June 14, 1968 (see record of conviction attached to Exh. 5). The question arises as to whether the respondent would be liable to induction if he were not a permanent resident alien in 1968.

The fact that the respondent may not have been a permanent resident alien did not relieve him from the duty of submitting for induction into the armed forces. The applicable statute, section 12, Universal Military Training and Service Act, 50 U.S.C. App., section 462, reads in pertinent part:

Any ... *person* ... who ... evades ... service in the armed forces or any requirements of this title ... or of said rules, regulations or directions, or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, or rules, regulations or

161

directions made pursuant to this title ... shall upon conviction ... be punished by imprisonment.... (Emphasis supplied.)

An induction order imposes a continuing duty on a "registrant" to submit for induction regardless of the fact that he may have abandoned his permanent residence following a departure to evade service in the armed services. Cf. *White* v. *United States*, 403 F.2d 1005 (C.A. 8, 1968), cert. denied 89 S.Ct. 1196 (1969); *United States* v. *Prince*, 398 F.2d 686 (C.A. 2, 1968); *Silverman* v. *United States*, 220 F.2d 36 (C.A.8, 1955). The Selective Service regulations implementing section 12 of the Universal Military Training and Service Act, *supra*, provide in substance that it is a continuing duty of all "registrants" to report for and submit to induction "regardless of the time when or the circumstances under which a registrant fails or failed to report for induction pursuant to an Order to Report for Induction," 32 CFR 1642.2 and 1642.15. Under the statute and the regulations the order for the respondent to report for induction in 1968 was proper regardless of his resident status at that time.

Counsel contends that the respondent is not subject to deportation pursuant to section 212(a)(22) of the Immigration and Nationality Act because he departed from the United States for the primary purpose of attending college in Canada and not for the purpose of avoiding or evading training or service in the armed forces of the United States. Counsel relies on the Board's decision in *Matter of Nunez-Toro*, 11 I. & N. Dec. 501, 503 (BIA, 1966), which holds that an exclusion or deportation pursuant to section 212(a)(22) may occur only if the alien's *"primary purpose* for departing or remaining abroad was to avoid training or service in the armed forces." (Emphasis supplied.)

We find no support in the evidence for counsel's contention. The respondent testified in an exclusion proceeding on October 11, 1966 (p. 10, Exh. 3) as follows:

On 6 September I left for Canada because I didn't want to report [for induction]. and I didn't want to stick around California ... I felt they [Selective Service] would pull me out of school. I tried to go to the University of British Columbia but I was too late to register.

We note that on this occasion the respondent was applying for admission as a nonimmigrant student to resume his studies at Stanford University (p. 3 of Exh. 3). When questioned as to how long he had been in a state of mind that he would not serve in the armed forces of the United States, the respondent replied, "it is hard to pin point, but probably the 1st of September of this year [1966]" (p. 12, Exh. 3). The respondent departed for Canada on September 2, 1966. He surrendered his alien registration receipt card (Form I-151) at the office of the Immigration and Naturaliza-

tion Service in Vancouver, B.C., Canada on September 6, 1966. He stated on this occasion that he was abandoning his residence in the United States (Exh. 2).

The respondent's testimony at the deportation hearing of July 7, 1971 is of the same tenor. He testified, "I wasn't going to serve in the Armed Forces of the United States" (p. 16). When questioned as to whether he really went to Canada to avoid the draft, the respondent answered:

A. ... what was in my mind was that I wanted to continue going to school and the United States wasn't going to permit me going to school...anywhere.
Q. Because they were going to draft you?
A. Sure.

The respondent's testimony, his conviction for refusing to submit to induction and his statement on the questionnaire, dated August 30, 1966, which accompanied the Selective Service order to report for induction (Exh. 4)[1] satisfy us that deportability under section 212(a)(22) has been established by evidence that is clear, unequivocal and convincing.

We find no merit to counsel's contention that the Government is estopped from deporting the respondent. Counsel's argument in this regard is based upon claims (1) that the respondent was expressly assured that he would not be deported if he pleaded guilty to the charge of refusing to submit to induction and serve his sentence; (2) that the respondent was not advised that he could have applied to be relieved from liability for training and service under section 4(a) of the Selective Service Act of 1967; and (3) that the excessive delay in instituting deportation proceedings until after the completion of criminal action against the respondent caused severe detriment to him.

The only evidence supporting the respondent's claim that he was assured immunity from deportation in return for a plea of guilty in the criminal action is his self-serving declaration (p. 19). The special inquiry officer stated for the record that he would reopen the proceeding for corroborating evidence, provided the respondent could produce such evidence within 30 days (p. 30). To date no such evidence has been submitted. Furthermore, the public defender, who it is alleged gave the assurance, has no authority to enter into any agreement which would bind the Government.

The respondent was not eligible for relief under section 4(a) of the Selective Service Act because at the time he refused to submit

[1] Under remarks (section 20) the respondent stated, "I will refuse to comply with any decision reached by the 'Selective Service Bureau' as I feel conscription is amoral and toally unjustified."

to induction, he was not a nonimmigrant. Furthermore, if the respondent had been in a position to claim exemption from military service under section 4(a) of the Selective Service Act, he would now be subject to deportation based on inadmissibility under section 212(a)(22) as an alien ineligible for citizenship.

We find no excessive delay in commencing deportation proceedings in this case. There is no statutory period within which a deportation proceeding must be instituted under section 241(a) of the Immigration and Nationality Act. The respondent testified that he last entered the United States in January of 1971 (p. 26). He was admitted as a nonimmigrant visitor to visit his parents. The order to show cause was served upon him in April of 1971. He testified that if permitted he wished to enroll at Stanford University (p. 28).

Our review of the record and briefs satisfies us that the hearing was fair, that deportability on both charges has been established by clear, convincing and unequivocal evidence, and that the special inquiry officer properly applied the pertinent legal principles. We affirm the special inquiry officer's finding that the respondent is not eligible for voluntary departure under the provisions of section 101(f)(7) of the Act. He is precluded from establishing good moral character for the statutory period as an alien who has been confined to a penal institution for an aggregate period of 180 days. An appropriate order will be entered.

ORDER: The appeal is dismissed.