## MATTER OF MULLER

### In Exclusion Proceedings

#### A-14126816

*Decided by Board December 4, 1978*

(1) The factors bearing on a determination whether the applicant is returning from a temporary visit abroad include the duration of the alien's absence from the United States, the location of the alien's family ties, property holdings, and job, and the intention of the alien with respect to both the location of his actual home and the anticipated length of his excursion.

(2) Abandonment of lawful permanent resident status held established where alien's absence from the United States spanned the period from 1968 to 1974 and was coupled with the establishment of a home with his Mexican wife and three Mexican children.

(3) Section 212(a)(22) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(22), providing for the exclusion of aliens who have departed from or remained outside of the United States to avoid or evade training or service in the armed forces during a period of war or national emergency, applies to an alien who departed from the United States after his induction or enlistment whose primary purpose for departing or remaining outside of the country was to avoid military service.

(4) Alien who deserted from the armed forces of the United States is not within the terms of President Carter's Proclamation No. 4483 relating to the pardon of persons who had committed certain violations of the Military Selective Service Act. *Matter of Rahman*, Interim Decision 2665 (BIA 1978) distinguished.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Former immigrant alien who, in addition to having abandoned his residence in the United States, was not and is not in possession of any valid entry documentation; and

Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22)]—Former immigrant alien who departed from or remained outside the United States to avoid training or service in the United States armed forces during a national emergency

ON BEHALF OF APPLICANT: Michael D. Finnegan, Esquire
Simmons & Ungar
517 Washington Street
San Francisco, California 94111

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated September 9, 1977, an immigration judge found the applicant excludable under sections 212(a)(20) and 212(a)(22) of the

Immigration and Nationality Act, 8 U.S.C. 1182(a)(20) and (22). The immigration judge has certified his decision to us for review. We affirm.

The applicant is a 31-year-old native and citizen of Mexico who was admitted to the United States for permanent residence on September 14, 1965. On or about September 21, 1965, the applicant enlisted in the United States Army (Ex. 3), and completed basic training at Fort Polk, Louisiana (Tr. p. 5). The applicant was then assigned to duty at Fort Riley, Kansas (Tr. p. 5). On March 23, 1966, the applicant left Fort Riley without leave or authorization and returned to Mexico (Ex. 3; Tr. p. 5).

On June 4, 1967, the applicant was paroled into the United States to proceed to Fort Bliss, Texas for further action by the military. At an exclusion hearing held on December 18, 1974, the applicant testified that he reported back to the commander at Fort Bliss, at which time a "pre-trial" hearing was held (Tr. p. 7). The applicant was then placed in the stockade (Tr. p. 7). It appears from the record that the company commander told the applicant of his intention to seek a sentence of one year for the applicant's absence without leave (Tr. p. 7). The applicant testified that he was frightened at the thought of receiving such a sentence, and escaped from the stockade in August, 1967 (Tr. pp. 7, 8). He returned to Mexico in January, 1968 (Tr. p. 38), and, according to his testimony, did not seek to reenter the United States until November 5, 1974 (Tr. p. 11), at which time he presented himself for inspection as a returning resident alien seeking relief under President Ford's clemency program (Ex. 5).[1] The Service charged the applicant with excludability under sections 212(a)(20) and (22) of the Act, and, after an exclusion hearing held on December 18, 1974, the immigration judge found both charges sustained.

Section 212(a)(20) of the Act provides for the exclusion of immigrants seeking admission into the United States who are not in possession of a valid immigrant visa or other valid entry document. The applicant sought admission as a returning lawful resident alien. Section 101(a)(20) of the Act, 8 U.S.C. 1101(a)(20), defines the term "lawfully admitted for permanent residence" as meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Section 211(b) of the Act, 8 U.S.C. 1151(b), provides eligibility for a waiver of the documentary requirements for admission for one who can qualify as a "returning resident immigrant" as that term

---

[1] The applicant's Alien Registration Card (Form I-151) was apparently left by him in the stockade at Fort Bliss with all of his belongings (Tr. p. 28). At the time he attempted to enter the United States, therefore, he was not in possession of an I-151. In any event, Form I-151 is not a valid reentry document after an absence of over one year. 8 C.F.R. 211.1(b)(1).

is defined in section 101(a)(27)(A) of the Act, 8 U.S.C. 1101(a)(27)(A). A "returning resident immigrant" is defined by section 101(a)(27)(A) as "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad,"

The issue in this case is whether the applicant abandoned his status as a lawful permanent resident when he left the United States in January, 1968, thereby rendering him excludable under section 212(a)(20) of the Act upon his return. It is necessary, therefore, for us to examine the factors bearing on a determination whether the applicant is returning from a temporary visit abroad. In general, these include the duration of the alien's absence from the United States, the location of the alien's family ties, property holdings, and job, and the intention of the alien with respect to both the location of his actual home and the anticipated length of his excursion. *Matter of Quijencio*, Interim Decision 2319 (BIA 1974).

The applicant has resided in Mexico since 1968, entering the United States only twice for short visits of a few hours duration (Tr. pp. 25, 36, 39). The applicant is married to a Mexican citizen, and has three children, all of whom are Mexican citizens (Ex. 5). Although the applicant's mother is a lawful permanent resident and lives in Los Angeles, California, his family ties are mostly in Mexico, where he lives with his wife and three children (Ex. 5). In determining whether an alien has abandoned his lawful permanent residence in the United States, the length of the alien's absence is not the only factor. However, where, as here, the absence spans a considerable period of time and is coupled with the establishment of a home and other ties abroad, we believe that abandonment of lawful permanent residence is clearly established. *See generally Gamero v. INS*, 367 F.2d 123 (9 Cir. 1966); *U.S. ex rel. Lesto v. Day*, 21 F.2d 307 (2 Cir. 1927); *Matter of Kane*, Interim Decision 2371 (BIA 1975). We find, therefore, that the applicant is excludable under section 212(a)(20) of the Act.

We also find that the applicant is excludable under section 212(a)(22) of the Act. That section provides, in part, for the exclusion of aliens from the United States who—

> have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency. . . .

On appeal, counsel for the applicant contends that section 212(a)(22) is aimed at excluding aliens whose departure from the United States was motivated by the desire to avoid service in any form. He argues that the applicant, who had enlisted in the army, is not properly subject to exclusion under this section.

In *Matter of Nunez-Toro*, 11 I. & N. Dec. 501 (BIA 1966), we re-

viewed the provisions of section 212(a)(22) and found that section as well as its predecessor in the Immigration Act of 1917 was not limited to those who departed from the United States before becoming members of the armed forces. We concluded that it applies equally to an alien who departed after his induction or enlistment. *See also Matter of V—B—*, 3 I. & N. Dec. 265 (BIA 1948); *Matter of B—R—*, 2 I. & N. Dec. 482 (BIA 1946). We also held that the departure or the remaining outside of the United States must have been for the primary purpose of avoiding military service. *Matter of Dunn*, 14 I. & N. Dec. 160 (BIA 1972), *aff'd without opinion, Dunn v. INS*, No. 72-2186 (9 Cir. 1974), *cert. denied*, 419 U.S. 919 (1974); *Matter of Riva*, 13 I. & N. Dec. 268 (BIA 1969); *Matter of Nunez-Toro, supra*. Therefore, the applicant in the present case is inadmissible if his primary purpose for departing or remaining abroad was to avoid training or service in the armed forces.

We find that the evidence of record establishes that the applicant's primary purpose in departing from the United States was to evade service in the United States Army. The applicant testified at his exclusion hearing that he believed he was a deserter (Tr. p. 28). He further testified that he was assigned duty as a cook at Fort Riley, but he told his commanding officer that he did not want to be a cook (Tr. p. 30). The applicant left the army without leave in 1966, and returned to Mexico because he had no place to go in the United States (Tr. p. 32). The applicant was paroled into the United States in June, 1967 (Ex. 3), and was turned over to the United States military authorities at Fort Bliss, Texas (Tr. p. 34). The applicant was placed in the stockade at Fort Bliss, and subsequently escaped from custody and returned to Mexico (Tr. p. 36). The applicant gave the following testimony regarding his departure at that time:

> IMMIGRATION JUDGE: In other words you broke out of the stockade at that time because you did not want to chance a year's imprisonment. Is that right?
> APPLICANT: Yes, sir.
> IMMIGRATION JUDGE: Why did you then return to Mexico again?
> APPLICANT: Because I had no place to go in the United States. Of course they catch me in the states.
> IMMIGRATION JUDGE: In other words you went back to Mexico because you were afraid that the military authorities would pick you up if you remained in the United States. Is that right? Is that right, sir?
> APPLICANT: Yes, sir, it is. (Tr. p. 36).
> * * *
> IMMIGRATION JUDGE: Well, did you consider yourself a deserter by the following September of 1967?
> APPLICANT: Yes. (Tr. p. 38)
> * * *
> IMMIGRATION JUDGE: . . . Isn't it true that you then remained outside of the United States between January of 1968 and November of this year [1974] . . . be-

cause you were afraid that if you returned to the United States for any prolonged period the military authorities would locate you and bring you to trial?

APPLICANT: Yes, sir.

IMMIGRATION JUDGE: And then the only reason that you came back here on November 5, 1974 was because you heard of President Ford's amnesty program and you thought this might apply to you. Is that correct?

APPLICANT: Yes, sir. (Tr. p. 39)

We find that the applicant's own testimony establishes that his primary purpose for leaving the United States in 1968 and remaining in Mexico thereafter was to avoid service in the army and punishment for his previous absence without leave. This testimony further establishes that the applicant deserted from the military in 1968.[2] We find, therefore, that the immigration judge correctly found the applicant excludable under the provisions of section 212(a)(22) of the Act. We believe that our finding in this regard is supported by the applicant's testimony that he sought to reenter the United States in 1974 only after the announcement of President Ford's amnesty program (Tr. p. 22)[3], thereby indicating his intention not to return to military custody.

On appeal, the applicant claims that he is a beneficiary of the pardon under President Carter's Proclamation No. 4483 relating to persons who had committed certain violations of the Military Selective Service Act[4] between August 4, 1964 and March 28, 1973, Pres. Proc. No. 4483, 42 Fed. Reg. 4391 (1977), reprinted in 50 U.S.C.A. App. § 462 (1978), and the Executive Order implementing that pardon. Exec. Order No. 11967, 42 Fed. Reg. 4393 (1977), reprinted in 50 U.S.C.A. App. § 462 (1978). The Executive Order provides, in pertinent part, that:

> Any person who is or may be precluded from reentering the United States under 8 U.S.C. 1182(a)(22) or under any other law, by reason of having committed or apparently committed any violation of the Military Selective Service Act shall be permitted as any other alien to reenter the United States. . . .

In *Matter of Rahman*, Interim Decision 2665 (BIA 1978), we found that the Attorney General had interpreted the Presidential Pardon as relieving those aliens *within its terms* from the application of the "evad-

---

[2] The record contains a letter, dated December 19, 1974, from the commanding officer at Fort Benjamin Harrison, addressed to the applicant herein, stating the intention of the army to issue to him an Undesirable Discharge Certificate based on misconduct (desertion) (Ex. 6). No indication appears in the record that such a certificate was, in fact, issued to the applicant. However, we find that we need not base our decision on any action of the military authorities, but rather may make our own finding as to whether or not the applicant deserted from the army.

[3] In fact, President Ford's Program for the Return of Vietnam Era Draft Evaders and Military Deserters, Presidential Proclamation No. 4313, by its terms did not apply to "an[y] individual who is precluded from re-entering the United States under 8 U.S.C. 1182(a)(22) or other law. . . ." Pres. Proc. No. 4313, 39 Fed. Reg. 33293 (September 16, 1974), reprinted in 50 U.S.C.A. App. § 462 (1978).

[4] 50 U.S.C.A. App. § 451 et. seq.

ing training or service" provisions of section 212(a)(22) of the Act if the alien presented himself for readmission to the United States as a returning lawful permanent resident on or before June 1, 1978. *See* 42 Fed. Reg. 59562 (1977). However, we have before us the case of an alien who has *deserted* from the military, and we find that the pardon and accompanying Executive Order and implementing interpretation of the Attorney General do not, by their terms, apply in this case.

In his Executive Order, President Carter specifically limited his pardon to those persons who had committed, or apparently had committed, "any violation of the Military Selective Service Act." However, the Military Selective Service Act, 50 U.S.C.A. App. 451 et. seq., does not encompass the applicant's case, which is covered by the Uniform Code of Military Justice, 10 U.S.C. § 801 et. seq.[5] There was no pardon given for those classified as deserters from the military; in fact, deserters were processed under a separate program established by the Department of Defense known as the Special Discharge Review Program. *See* New York Times, March 29, 1977, at p. 1, col. 1. The applicant has not, however, presented any evidence that he took part in that program. We find, therefore, that we need not consider what effect, if any, such participation would have on the grounds of excludability we have found sustained on this record.

We have carefully considered the record as a whole, and find that the applicant is excludable as charged. We will, therefore, dismiss the appeal.

**ORDER:** The appeal is dismissed.

---

[5] 10 U.S.C. § 885 defines the crime of desertion and provides for punishment as directed by a court-martial.