**UNITED STATES ex rel. LESTO v. DAY, Commissioner of Immigration.**

Circuit Court of Appeals, Second Circuit. August 4, 1927.

No. 356.

1. **Aliens ☞54(16)—Court may not upset administrative actions of immigration officials, if there was fair investigation, no manifest abuse of discretion, and no error of law.**

Administrative action by the immigration officials may not be upset by the courts, unless no fair investigation was had, or there was a manifest abuse of discretion, or some error of law was committed; it not being enough to justify interference by the court that it might have reached an opposite conclusion on the evidence.

2. **Aliens ☞54(17)—Board's finding that immigrants were not immigrants returning from a temporary visit abroad held not so unreasonable as to warrant judicial interference.**

Finding of board of special inquiry that immigrants seeking admission as nonquota immigrants were not immigrants returning from temporary visit abroad *held*, under the evidence, not so unreasonable or arbitrary as to warrant judicial interference.

3. **Aliens ☞51½—"Temporary," in phrase "returning from a temporary visit," in definition of nonquota immigrant, held to mean more than mere retention of domicile (Immigration Act 1924, § 10, and § 4 [b] [8 USCA §§ 204, 210]).**

The word "temporary," in the phrase "returning from a temporary visit abroad," in Immigration Act 1924, § 4 (b), being 8 USCA § 204, classifying as a nonquota immigrant an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad, *held* to mean than the mere retention of domicile, that is, an intention to keep the United States as a home to which one will ultimately return, in view of section 10 of the act (8 USCA § 210), prescribing the issuance of permits for temporary absence; the intention of the departing immigrant must be to return within a period relatively fixed by some early event.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Temporary.]

4. **Aliens ☞54(7)—Immigrant seeking admission as returning from temporary visit abroad has burden of proof (Immigration Act 1924, § 23 [8 USCA § 221]; Immigration Rules July 1, 1925, rule 3, subd. I).**

Immigrant seeking admission as an immigrant returning from a temporary visit abroad has the burden of proof, under Immigration Act 1924, § 23 (8 USCA § 221), and Immigration Rules July 1, 1925, rule 3, subd. I.

5. **Aliens ☞54(17)—Return permit to alien departing temporarily is at best only prima facie evidence of status on return (Immigration Act 1924, § 10 [f], being 8 USCA § 210; Immigration Rules July 1, 1925, rule 3, subd. I, par. 2).**

A return permit, to which alien, about to depart temporarily from the United States, is entitled, is under Immigration Act 1924, § 10 (f), being 8 USCA § 210, and Immigration Rules, July 1, 1925, rule 3, subd. I, par. 2, at best only prima facie evidence of claimed status of a nonquota immigrant returning from a temporary visit abroad.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Luigi Lesto, in behalf of Buono Lucia Lesto and others, against Benjamin M. Day, Commissioner of Immigration at the Port of New York. Cross-appeals from an order which sustained in part and dismissed in part the writ. Reversed on appeal of Commissioner.

The relators are a family of Italian immigrants, consisting of the father, Luigi Lesto, his wife, Buono Lucia Lesto, and their three children, Anna, Guiseppina, and Ferdinando, aged respectively eight years, two years, and seven months. They arrived at the port of New York on July 31, 1926, claiming admission as nonquota immigrants, as defined in section 4(b) of the Immigration Act of 1924 (8 USCA § 204 [Comp. St. § 4289¾b]). The wife and the oldest child presented nonquota immigration visas. Luigi was in possession of a return permit issued to him October 30, 1925. The two youngest children had no documents. A board of special inquiry, after a hearing, voted unanimously to exclude, under section 13 a (3), being 8 USCA § 213 (Comp. St. § 4289¾ff); all the relators as being quota immigrants, and not nonquota immigrants, as specified in their visas. This was affirmed by the department and deportation was ordered. Thereupon they sued out a writ of habeas corpus. This was sustained as to the husband, wife, and daughter Anna, and from this portion of the order the commissioner has appealed. The writ was dismissed as to the two youngest children, and they were remanded to the custody of the commissioner. On their behalf an appeal was taken from this portion of the order. Other facts deemed material will appear in the opinion.

Charles H. Tuttle, U. S. Atty., and Alvin McKinley Sylvester, Asst. U. S. Atty., both of New York City, for respondent.

Robert Spear, of New York City, for relators.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] It is well settled that

administrative action by the immigration officials may not be upset by the courts, unless no fair investigation was had, or there was a manifest abuse of discretion, or some error of law was committed. Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; United States ex rel. Markin v. Curran, 9 F.(2d) 900 (C. C. A. 2). That the court itself might have reached an opposite conclusion upon the evidence is not enough to justify its interference. United States v. Rodgers, 191 F. 970, 974 (C. C. A. 3); Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590. In the light of these principles the record must be examined.

From Luigi's testimony at the hearing before the board of special inquiry it appears that he first arrived in the United States in 1906 or 1908. How long he remained is not clear, but he served in the Italian army six years, including the years of the war. After the war he came again, bringing his wife and infant daughter, Anna, born in Italy. They say that this was July, 1918, but apparently they are confused in the year, because it was following Luigi's discharge from the army, and his discharge is dated April, 1919. They remained here until October, 1921. During that time he and his brother-in-law had a little fruit store and push cart on East Twenty-Ninth street. He has no interest in it now. He says that in 1918 he declared his intention to become a citizen, but he produced no papers, because "he left it in Italy." Here again the date must be 1919. In October, 1921, he took his wife and child back to Italy, because the wife was sick. He returned to New York in March, 1922, and remained about a year. The verification of his arrival from the manifest of the steamship states he was a "workman in the United States from 1906 to 1921." This statement is obviously incorrect in its implication that he was here continuously. He went back to Italy early in 1923. His next return to the United States was in June, 1925. He came as a temporary visitor, because, he says, he intended merely to make arrangements for the return of his family, and this was the way he was advised to gain admission. The verification of his arrival on this occasion from the manifest of the steamer states that he and his wife "were in the United States from 1919 to 1923." This is clearly untrue as to his wife, who was not here after October, 1921. He went back in October, 1925, after applying for the return permit. In this application he stated that he was last admitted in 1922, and said nothing of his entry as a visitor in June, 1925. In response to questions at the hearing, he said he did not intend to deceive the department.

The wife testified that she went back to Italy in 1921, because she was sick; that all her household furniture she left with her brother; that when she departed she intended to return to the United States; that she had not returned earlier, because she was "always sick and unable to return." During these years, however, two children were born to her.

The wife's brother also testified. He said that Luigi Lesto left here about four or five years ago, and that he did not know why his sister, Mrs. Lesto, went back to Italy.

[2] It thus appears that a fair investigation was had. We cannot say on this evidence that the board's finding that the relators were not immigrants returning from a temporary visit abroad is so unreasonable or arbitrary as to be invalid.

[3] The wife and daughter had been away almost five years. The husband had been away more than two years before he came back as a temporary visitor, and more than four years before he applied for permanent readmission. During all this period he had no business nor place of habitation in this country. The word "temporary," in the phrase "returning from a temporary visit abroad," means more than the mere retention of domicile; that is, an intention to keep the United States as a home, to which one will ultimately return. This follows from section 10 of the Immigration Act of 1924 (8 USCA § 210 [Comp. St. § 4289¾e]), prescribing the issuance of permits for temporary absence. The applicant must state the length of his intended absence and the reasons therefor. The permit shall not be valid for more than one year, though there is a provision for extension from time to time for a period of six months for good cause shown. While at the present time there is no immigration rule defining a temporary visit abroad, the suggested construction is corroborated by the practice of the department under former acts in adopting a rule limiting a temporary visit to an absence of six months' duration. Such a rule was sustained as reasonable. See United States ex rel. Randazzo v. Tod, 297 F. 214 (C. C. A. 2); United States ex rel. Devenuto v. Curran, 299 F. 206 (C. C. A. 2). We cannot agree, therefore, with the opinion of the learned judge from whose order this appeal is taken that retention of domicile is alone sufficient to establish that the relators are non-quota immigrants. Without attempting a complete definition of "a temporary visit," we may say that we think the intention of the

departing immigrant must be to return within a period relatively short, fixed by some early event.

[4] In view of the fact that the wife bore two children while abroad, and gave no details of her reasons for staying so long, except that she was always sick, the board had some basis for finding that she was not returning from a "temporary visit," within the meaning of the statute. At least, there was basis for their thinking that she had not carried the burden of proof imposed by section 23 of the act (8 USCA § 221 [Comp. St. § 4289¾kk]) and rule 3, subd. I, of the Immigration Rules of July 1, 1925. The board of review did not give credence to the wife's excuse of sickness.

[5] The husband's departure from the United States, disregarding the brief sojourn here in 1925 as a temporary visitor, was early in 1923. On the evidence it is impossible not to entertain doubt that when he left at that time he intended only a temporary visit. He apparently went into business in Italy. In the verification of his arrival as a visitor in 1925, the ship's manifest calls him a "merchant." The burden of proof was his. His possession of the return permit does not aid him. Whether the obtaining of it without disclosing his admission in 1925 as a temporary visitor under section 3 (2) of the act (8 USCA § 203 [Comp. St. § 4289¾aa]) was a fraud upon the department we need not decide. Of course, as a temporary visitor he was not entitled to a return permit. Rule 24, subd. B, par. 1, of the Immigration Rules. He must obtain it on the strength of his lawful admission as an immigrant, and so he did, relying upon his admission in 1922. But, at best, a return permit is only prima facie evidence. Section 10 (f) of the act; rule 3, subd. I, par. 2, of the Immigration Rules. See Johnson v. Keating ex rel. Tarantino, 17 F.(2d) 50 (C. C. A. 1). Therefore the board of special inquiry was justified in investigating his claim that he was returning from a temporary visit abroad. As already intimated, we think their finding that he had not proved that he was is not so unreasonable as to justify judicial interference.

If the case fails as to the adult relators, there is obviously no ground for objecting to the exclusion of the children.

For the above reasons, the appeal by the commissioner must be sustained, and the appeal on behalf of the two children must be denied. The order sustaining the writ as to Luigi Lesto, Buono Lucia, and Anna is reversed, with directions to dismiss the writ. The order dismissing the writ as to Guiseppina and Ferdinando is affirmed.