**UNITED STATES ex rel. ALTHER et al. v. McCANDLESS, Commissioner of Immigration.**

· No. 4420.

Circuit Court of Appeals, Third Circuit.

Jan. 12, 1931.

The opinion of the District Court was as follows:

The relator Lothar K. Alther, a Swiss citizen, is being held for deportation. The warrant is based upon two findings of which only the first need be considered. It is that the relator was at the time of his entry into the United States a quota immigrant not in possession of a quota immigration visa.

This alien's last entry into the United States was on January 18, 1927, at St. Alban's, Vt., under a permit to re-enter issued December 30, 1926. The government contends that this permit was obtained by fraudulent concealment and misstatement of facts. As I view the case, however, the manner in which it was obtained is not important. Assuming that it was obtained honest-

ly, it would not establish the alien's right to be in this country if he is a quota immigrant. Section 10(f) of the Immigration Act of 1924 (8 USCA § 210(f) expressly provides that a permit to re-enter "shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad," and it is not questioned that his last absence in January, 1927, was in fact a temporary visit only.

██ But it is also an undisputed fact that the alien did not have an immigration visa. By section 13 of the act of 1924 (8 USCA § 213), no *quota* immigrant may be admitted to the United States unless he has an unexpired immigration visa. By section 14 (8 US CA § 214), any alien in this country who is found to have been at the time of entry not entitled to enter must be deported. The finding on which the warrant issued is that he was a quota immigrant. If the alien had a fair hearing, and if there was substantial evidence to sustain this finding, it follows that this petition must be dismissed and the alien deported. These are the only questions before the court on habeas corpus in deportation proceedings. It cannot be seriously contended that the alien did not have a fair hearing. The function of this court, therefore, is limited to ascertaining whether or not there was any substantial evidence from which it could be found that he was a quota immigrant. With the question as thus narrowed in mind, we proceed to examine the record of the hearing, confining ourselves strictly to the facts adduced at the hearing before the immigrant inspector.

From the record returned with the writ it appears that Alther first entered the United States on July 5, 1912. That entry was lawful. On September 27, 1912, he filed his declaration of intention. In 1914 he went to Europe for a few months, and again for a few months in 1917, returning September 15, 1917. These absences had no effect upon his residence or status and he was a lawful resident of the United States from July, 1912, to March, 1918. In March, 1918, he went to Switzerland. Thereafter he remained abroad continuously for eight and a half years or until October, 1926, residing all of that time in Switzerland. On October 7, 1926, he left Switzerland and came to America, arriving the same month. Prior to leaving Switzerland (on September 20, 1926), he had presented his passport to the American Consul at Luzerne and had applied for and obtained a nonimmigrant visitor's visa under section 3(2), 8 USCA § 203(2) as "an alien visiting

the United States temporarily as a tourist or temporarily for business or pleasure." He was admitted at Rouse's Point, N. Y., under this visa. On December 17, 1926, being in this country on the strength of his visitor's visa, he applied for, and on December 30 obtained, a permit to re-enter the United States under section 10 of the Immigration Act of 1924. In his application he stated that he last arrived in the United States on September 12, 1917, omitting all reference to his arrival in October, 1926, under his visitor's visa. He then went to Canada, met his wife, and, with her, was again admitted to the United States at St. Alban's on January 17, 1927, presenting his return permit to re-enter at that time. His wife had a passport bearing a visitor's visa.

The Immigration Act of 1924 became a law while this alien was residing in Switzerland. Thereafter, upon any return to this country, he came under its terms and was either a quota immigrant or a nonquota immigrant. By section 4(b) of that act, 8 USCA § 204(b), "an immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad" is a nonquota immigrant. By section 5 (8 USCA § 205), a quota immigrant means any immigrant who is not a nonquota immigrant. The relator contends that he is a nonquota immigrant under section 4(b). It being conceded that he had been previously lawfully admitted to the United States, the issue is thus still further narrowed to whether there is evidence from which it can be found that when he returned in 1926 he was not returning from a temporary visit abroad. Was his stay of eight and a half years in Switzerland a temporary visit? Or, rather, is there any substantial evidence to sustain a finding that it was not?

In support of the contention that his stay abroad was a temporary visit, we have: (1) His own positive statements at the hearing that when he left the United States in March, 1918, it was his intention to return, and that ever since his original entry in 1912 he has regarded himself as a resident of the United States; (2) the fact that shortly after his original entry he made formal declaration of his intention to become a citizen of the United States; (3) that in June, 1917, he registered with the local draft board under the Selective Service Act (40 Stat. 76), and that before leaving the country he obtained the authorization of the board; (4) that before leaving he gave a general power of attorney to one Hans Suderous of Palisade, N. J., to manage and conduct in this country his busi-

ness of importing and exporting of general merchandise. With regard to these matters of proof it may be said that the taking out of first papers undoubtedly indicates an intention, *existing at the time*, of remaining permanently in the United States. How long that intention continued is another matter. The fact that the alien did not apply for naturalization five years later when the United States was at war might or might not counterbalance any inference to be drawn from the taking of first papers. Registration with the draft board was compulsory, and when he wished to leave the country the authorization of the board was necessary in order to obtain a passport. Being an alien, he was not under the law liable to be called for military service. The power of attorney would have more value if there was any evidence as to the nature or extent of the business to be conducted under it or the length of time such business was carried on. It may have been given solely for the purpose of completing the final winding up of his business.

The substantive evidence on which the finding was based consists of: (1) The fact of absence from this country and residence in Switzerland from March, 1918, to October, 1926; (2) the obtaining in 1926; in order to return to the United States, of a nonimmigrant visitor's visa instead of a nonquota immigrant visa. It is also urged that the suppression of fact and misrepresentation as to his last previous arrival subsequently made in the application for the permit to re-enter is evidence of a scheme of fraud. If so, it is also evidence of a consciousness that the alien had not, when he left Switzerland in October, 1926; been entitled to enter as a nonquota immigrant, because he knew that his stay there was not a temporary visit but a permanent residence.

The purposes for which the alien left the United States in 1926 on his "alleged temporary visit" were stated by him at the hearings. At the first hearing he said: "I went to Switzerland to get married, and on account of my Mother because I had bad news from her as to her health." At the second hearing he explained that the real reason for his going was that he went abroad, representing two American firms, equipped with a full sample line of American merchandise in order to open a new market in Europe for these articles and then return. His mother, he said, was actually very ill and died shortly after he arrived; but he would not have gone on that account had he not been sent as a representative of the American concerns in question. "Regarding my getting married,"

he said, "I might say this was a slight error, as I was at a certain age where a boy more or less thinks of marriage, but the fact is that I only got acquainted with my wife in 1925 and married her in 1926." His employment with the two American companies which he represented terminated to all intents and purposes at the beginning of 1920, and shortly thereafter he entered the employ of the American Express Company as cashier and in charge of their travel department, in which capacity he arranged and conducted tours and generally assisted American travelers who had connections with the American Express Company. He continued in this employment until he left Switzerland in October, 1926.

On the question why he applied for a visitor's visa, his statement at the two hearings differ somewhat. At the first hearing he said that the reason was that he intended to come here for the purpose of making a commercial connection and *then return to Switzerland* and then apply for a nonquota visa for permanent residence in the United States. At the second hearing he stated that he asked the consul for a nonquota visa, was refused, and that he then got a visitor's visa so that he could come to the United States and see whether he could arrange his permanent admission to this country after he got here. He stated that when he later applied for a permit to re-enter he understood that he was expected to give the date of his last permanent entry into this country and not his entry on his visitor's passport.

Counsel for the petitioner strongly relies upon the case of Serpico v. Trudelle, 46 F. (2d) 669, District Court of Vermont, decided November 8, 1928, by Judge Howe. It may be pointed out, however, that this case differs from that in the important fact that there is not a particle of evidence here that, during his absence in Switzerland, this petitioner had a home in the United States. The Serpico Case was that of a young boy sent abroad by his parents to be educated, his father and his entire family living in America and maintaining a home during all the time that he was away.

In United States ex rel. Lesto v. Day, 21 F.(2d) 307, 308, the Circuit Court of Appeals for the Second Circuit said: "Without attempting a complete definition of 'a temporary visit,' we may say that we think the intention of the departing immigrant must be to return within a period relatively short, fixed by some early event." It will be noted that under this rule the animus revertendi must exist as a positive element. A mere ab-

sence of intention to remain abroad permanently will not preserve the alien's nonquota status. The burden of proof is still with the government and must be met by the production of substantial evidence, but if it appear that he left with no definite intention, either of staying permanently or of returning, merely planning to let future events determine his course, his stay would not be a temporary visit and the statute would automatically place him in the quota class. This is clearly in accord with the intent of the statute as shown by its scheme of classification. Tested by the rule announced in U. S. ex rel. Lesto v. Day or by any other logical and reasonable one, there was substantial evidence adduced at the hearing to support the finding that the alien's return to Switzerland in 1918 was not a temporary visit, but was a permanent relinquishment of his American domicile.

The conclusion reached makes it unnecessary to discuss the other ground upon which the warrant rested. It also follows that the other petitioner, Huldi Alther, has at most the status of a nonimmigrant visitor. As the court understands it, she has signified her willingness to leave voluntarily in the event that her husband is deported. No order on her writ will be made until her husband's case is finally disposed of.

The writ will be dismissed as to Lothar K. Alther and the relator remanded for deportation.

Adrian Bonnelly, of Philadelphia, Pa., for appellant.

Paul Freeman, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge.

After argument and full consideration had, this case is affirmed on the opinion of the court below.