MATTER OF T———

In DEPORTATION Proceedings

A-7420193

Decided by Board December 10, 1959

Deportability—Section 241(a)(1)—Fraud not essential to support charge that alien was not nonquota as specified in visa.

(1) Showing of fraud is not required to sustain charge under section 241(a) (1) of the 1952 act that at time of entry alien was not a nonquota immigrant as specified in his visa.

(2) An alien who abandoned his residence in the United States and departed to his native country with the intention of remaining there was not entitled to receive a nonquota immigrant visa as a returning resident and was further excludable upon his reentry in June 1952 as ineligible to citizenship by reason of having previously applied for and obtained an exemption from military service.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Not nonquota immigrant as specified.
Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Alien ineligible to citizenship.

## BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special inquiry officer requiring respondent's deportation upon the grounds stated above. The appeal will be dismissed.

The respondent, a 33-year-old married male, a native and citizer of Germany, was admitted to the United States for permanent resi dence on February 12, 1950. His wife and child remained in Ger many with the expectation of joining him when suitable arrange ments could be made. In October 1950 he registered under th Selective Service law. He filed a classification questionnaire i November; from December 1950 to February 1951 his classificatio was studied by the Board; on January 17, 1951, he was placed i Class I-A. He apparently requested a reopening of the classifica tion. The application was denied. He was ordered to report fc a physical examination on March 13, 1951. On March 7, 1951, tl respondent appeared before the Board and stated he intended leave the United States "to go back to Germany" to stay and desir

a permit to leave the United States. He testified that he was told he could not be given a permit to depart unless he signed SSS Form 130 applying for relief from service with the Armed Forces.

On March 14. 1951. respondent appeared before the Board and stated he wanted to sign SSS Form 130 and "knew what it stated." The application for relief which is dated March 9, 1951, but purports to be subscribed and sworn to on March 7, 1951, contains the information that the applicant for relief understood that he would forever lose his right to become a citizen and that he may be prohibited from entry into the United States as result of filing the application. On March 21, 1951, respondent was placed in Class IV–C. On April 3, 1951, he departed for Germany. The report executed by the Service in connection with the departure reveals that the reason given for going abroad was that the respondent was returning home and that he would remain there permanently.

The respondent explained that he returned to Germany because of his desire to rejoin his family, for he saw no opportunity of bringing them to the United States because he had been unable to secure employment which permitted him to accumulate enough money to bring his family, or to support them here, after their arrival. He denied that his return to Germany was caused by any fear of military service. Respondent joined his family in Germany and secured employment there. However, on April 15, 1952, he obtained a non-quota visa on the basis of the allegation that he was returning from a temporary visit abroad. His wife and child secured second preference visas under the German quota, as the wife and child of an alien lawfully admitted for permanent residence. The family came to the United States on June 2, 1952. Respondent admitted that he left the United States with the intention of residing permanently in Germany, but that after he had lived in Germany for a while, he changed his mind because economic conditions had deteriorated and he furthermore had decided that he did not try hard enough in the United States.

In his appeal and at oral argument the respondent stated that he furnished the United States Consul in Germany with true information and that the issuance of the visa was not induced by any fraud on his part. He stated he was not informed that his ineligibility to become a citizen would bar him from returning to the United States.

It is not necessary to consider whether or not fraud existed in this case. The charge that the respondent was not in possession of a proper visa is not based upon the existence of fraud. The respondent obtained a visa as a "returning resident." He was not a "returning resident." To be a "returning resident," respondent had to establish that he was "returning from a temporary visit abroad" (section 101(a)(27)(B), 8 U.S.C. 1101(a)(27)(B)). Respondent

did not depart for a temporary visit abroad. He departed with the intention of making his permanent home abroad. He cannot be considered as a person who has left for a temporary visit, even though shortly after he arrived in foreign territory he changed his mind (*International Mercantile Marine Co.* v. *Elting*, 67 F.2d 886 (C.A. 2, 1933); *United States ex rel. Alther* v. *McCandless*, 46 F.2d 288 (C.A. 3, 1931); *United States ex rel. Lesto* v. *Day*, 21 F.2d 307 (C.A. 2, 1927)). The "intention of the departing immigrant must be to return within a period relatively short, fixed by some early event."

The fact that respondent obtained a nonquota immigrant visa as a returning resident is not conclusive upon the Immigration Service which is required to reexamine the alien's eligibility to enter the United States (*United States ex rel. Katnic* v. *Reimer*, 25 F. Supp. 925 (S.D.N.Y., 1938); section 221(h), Immigration and Nationality Act, 8 U.S.C. 1201(h)). The applicant clearly was not a nonquota immigrant at the time of his application for entry and was, therefore, then inadmissible. This is so even if the respondent furnished to the consul the information for the visas without any intention of misleading him. The first charge is sustained.

We come to the second charge. At the time that the respondent applied for admission, the law provided that a person was "ineligible to citizenship" who was at any time permanently debarred from becoming a citizen under any law of the United States. The application for relief signed by the respondent was signed at a time when the Selective Service Act of 1948 provided that any person who had made application for relief shall thereafter be debarred from becoming a citizen of the United States. The respondent admitted both that he signed the form and that he was told it would debar him from becoming a citizen of the United States. He stated that although he was told that he could never be a citizen if he signed, it did not matter to him because he was going back to Germany to stay.

Respondent alleges that when he signed the application which made him ineligible for citizenship, he was not told that he would become inadmissible to the United States. If respondent was no told of this fact, perhaps it was because he was a resident alien ar the law then did not bar the entry of such an alien even though the was ineligible for citizenship. What made respondent inadmissible at the time of his entry in June 1952 was the fact that he was alien ineligible to citizenship and the fact that he was not a retu ing resident. If he had been a returning resident he would have been admissible. The fact that respondent was not aware that was inadmissible when he applied for his visa, or when he app for admission, is not of importance as far as the charges are concerned. The second charge is sustained.

502

The respondent has applied for suspension of deportation. The special inquiry officer has properly pointed out that the respondent is technically ineligible for the relief. Despite the favorable factors arising out of the absence of an arrest record, the good reputation, the steady employment, the presence of a citizen child, and the fact that the departure does not appear to have been to evade service in the United States, but was based on loneliness and inability to make a satisfactory adjustment, we are without power to grant the application. The appeal must be dismissed.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.