Mohammed **ALEEM** and Rahmatunnisa Aleem, Petitioners–Appellants,

v.

Brian R. **PERRYMAN**, District Director of the Immigration and Naturalization Service, Respondent–Appellee.

No. 96–3686.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1997.

Decided June 12, 1997.

David Rubman (argued), Chicago, IL, for Petitioners–Appellants.

Christopher Tracy (argued), Office of the Attorney, Chicago, IL, for Respondent–Appellee.

Before CUMMINGS, MANION, and DIANE P. WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Upon their return from an extended stay in Bahrain, an immigration judge determined that Mohammed Aleem and his wife Rahmatunnisa, both of whom are permanent resident aliens of the United States, should be excluded from this country, pursuant to 8 U.S.C. § 1182(a)(20),[1] because they had abandoned their permanent resident status. The Board of Immigration Appeals ("Board") affirmed this decision and the Aleems sought judicial review in the district court. Finding the Board's decision to be supported by substantial evidence, the district court denied their habeas petition. For the following reasons, we affirm.

## BACKGROUND

Mr. and Mrs. Aleem are citizens of India. Mr. Aleem immigrated to the United States and became a lawful permanent resident in 1977. Four years later, his wife followed suit. In 1984, Mr. Aleem completed a Masters degree in Computer Science at DePaul University in Chicago, but was unable to find work in his field. Because of his mounting debt and inability to find work in the United States, he applied and was accepted for a teaching position at Gulf Polytechnic University (later named University of Bahrain) in the country of Bahrain. He accepted this position and left for Bahrain in September 1984 accompanied by his wife and two children, a three-year-old and a newborn.[2] When the Aleems left for Bahrain, they abandoned their apartment, disposed of their personal property, and had no relatives remaining in the United States. Prior to leaving the United States, Mr. Aleem obtained a reentry permit from the INS valid for a two-year absence from the United States.

Mr. Aleem's initial contract with Bahrain University was for a two-year term. It was subsequently extended on several occasions. First, the contract was renewed for another

---

1. This section has been amended and recodified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). The amendments are not applicable to this case. To avoid confusion, all references to the Immigration Code shall be the provisions of the Code prior to the recent recodification.

2. Having been born in the United States, the children are both United States citizens.

two-year term (1986–1988) and then, following the second two-year term, the contract was renewed for an additional year (1988–1989). During this five-year period the Aleems lived in Bahrain in housing provided by the University. At the end of his first two-year teaching term in July 1986, Mr. and Mrs. Aleem returned to the United States (leaving the children in Bahrain) for two or three weeks. At the time of their return to the States, Mr. Aleem had already secured another two-year job offer from the University of Bahrain and two days after arriving in the United States, Mr. Aleem applied for a new reentry permit. Nevertheless, Mr. Aleem testified that he returned to the States to look for work and that if he found work here he would not return to Bahrain. He further testified that he did in fact visit various firms but could not find work here. When the Aleems returned to Bahrain, they left no personal belongings here.

Mr. Aleem next returned to the United States in August 1988, using the reentry permit he had obtained during his 1986 visit. On this visit he was accompanied by his wife and children. Once again, he stayed for two or three weeks. At the time of this second return visit, Mr. Aleem was still employed by Bahrain University having previously secured a one-year extension of his teaching contract. Mr Aleem testified that he returned to the States because he "intend[ed] to maintain my residency status." As with their previous visit, the Aleems stayed at the home of a friend, and when they returned to Bahrain they left no personal belongings in the United States.

The Aleems next returned to the United States in August 1989. Once again, Mr. Aleem had already secured a renewal of his teaching contract in Bahrain at the time of his visit. With respect to this visit, Mr. Aleem testified that he intended to stay for only two to three weeks to maintain his residence status and then return to Bahrain to teach for the 1989–1990 school year. After that, he intended to return to the United States permanently. When the Aleems reached the United States in August 1989, they sought to be admitted as lawful permanent residents returning from a "temporary visit abroad" and presented their Alien Registration Receipt Cards (colloquially referred to as "green cards") in support of their request for entry. When questioned by an Immigration Inspector, Mr. Aleem identified his current residence as Bahrain, where he had resided since 1984. He further stated that he had not maintained a residence in the United States since 1984 and that his documents allowing him to remain outside the United States had expired. He also stated that he had come to the United States to maintain his status and that he intended to remain for three weeks and then return to Bahrain. Mr. Aleem explained that he was informed that he could not obtain a third reentry permit; so, he was attempting to maintain his resident status by returning to the United States within one year of his last departure.[3] These statements also applied to his wife. Based on this information, the Aleems were placed in exclusion proceedings because they were seeking to enter the country as immigrants without valid entry documents.

In addition to the testimony set out above, Mr. Aleem testified at his hearing that during his five-year stay in Bahrain, he filed income tax returns with the Internal Revenue Service reporting his foreign earnings (he incurred no tax liability for these earnings). Mr. Aleem stated that he did so because he felt it was his obligation as a permanent resident. Mr. Aleem also testified that two months before he returned to the United States in 1989, he paid off a United States Department of Education student loan and he did so because he intended to return to the United States and he did not want to lose his credit. Finally, Mr. Aleem testified that he maintained his membership in several professional organizations and the DePaul Alumni Association. When asked why he maintained his association with these organizations, Mr. Aleem answered, "Because these professional organizations, if I am associated with them, I will have, I mean a very good

---

**3.** The back side of his green card states: "This card will be honored in lieu of visa and passport if rightful holder ... was not absent for over a year, and is not otherwise excludable under immigration laws."

reference in my job if I come back to the United States in association with these professional organizations." He also regarded one of the professional organizations to be "one of the most distinguished professional organization[s] in the world."

The immigration judge found that the government had established by clear, convincing and unequivocal evidence that Mr. and Mrs. Aleem had abandoned their lawful permanent resident status. On appeal, the Board of Immigration Appeals affirmed. In pertinent part, the Board found as follows:

> While the applicant's professed intent was to return to the United States, his actions have not conformed to that stated intent. The applicant did not maintain professional, financial, or familial ties to the United States beyond belonging to professional organizations based in this country and filing income tax returns. He has been absent from the United States, except for brief 2 to 3 week visits in 1986 and 1988, for the 5 year period preceding the commencement of the exclusion proceedings and intended to resume living overseas but for these proceedings. Although the applicant has stated that he looked for work during his visits to the United States, he has produced no evidence of his efforts to seek employment here.
>
> Based on the record before us, it appears that the applicant's employment with the University of Bahrain would continue as long as the University needed his services and as long as he wished to remain there. At the time he was placed in exclusion proceedings, the applicant intended to return to Bahrain and resume working with the University, which had renewed his contract. It appears that the applicant intended to work indefinitely with the University of Bahrain, as long as the employment was available. *Cf. Matter of Huang,* [19 I & N Dec. 749 (BIA 1988)] (applicant's absence due to her husband's having a contract to work and study at a Japanese university is not a temporary visit abroad fixed by some early event, where there is

no clear demarcation for when her husband's relationship with the university would end).

Certified Administrative Record at 6.

The Aleems brought a habeas action in the district court, seeking review of the Board's decision. The Aleems argued that the Board's finding that they had abandoned their permanent resident status was not supported by substantial evidence. The district court disagreed and denied their petition for habeas relief. The Aleems now appeal the district court's decision.

## ANALYSIS

■ We review *de novo* the district court's denial of a petition for habeas corpus. The Board's decision must be affirmed unless it committed an error of law or its findings of fact are not supported by substantial evidence. *De Brown v. Department of Justice,* 18 F.3d 774, 777 (9th Cir.1994); *Chavez–Ramirez v. I.N.S.,* 792 F.2d 932, 934 (9th Cir.1986). Because the determination that the Aleems abandoned their permanent resident status involves an "intrinsically fact-specific" issue, it is reviewed under the substantial evidence standard. *Chavez–Ramirez,* 792 F.2d at 934–935.

As a general matter, in order to gain admission into the United States, an immigrant must present a valid unexpired immigrant visa and a valid unexpired passport or other suitable travel document. See 8 U.S.C. § 1181(a). However, immigrants who have been lawfully admitted for permanent residence[4] and who are "returning from a temporary visit abroad" may be readmitted into the United States without such documentation. See 8 U.S.C. §§ 1101(a)(27)(B), 1181(b).

■ The determinative issue here is whether the Aleems' stay in Bahrain qualifies as a "temporary visit abroad." If it does not, they will be deemed to have abandoned their lawful permanent resident status. Al-

---

4. "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

though this Court has never had occasion to construe the phrase "temporary visit abroad," the Second, Third and Ninth Circuits have all attempted to shed some light on this "inherently nebulous statutory mandate," *Chavez–Ramirez*, 792 F.2d at 935, and are in general agreement as to the expression's general meaning. See *United States ex rel. Lesto v. Day*, 21 F.2d 307 (2d Cir. 1927); *United States ex rel. Alther v. McCandless*, 46 F.2d 288 (3d Cir.1931); *Chavez–Ramirez, supra.*

In *Lesto*, the Second Circuit stated that "[t]he word 'temporary,' in the phrase 're-turning from a temporary visit abroad,' means more than the mere retention of domicile; that is, an intention to keep the United States as a home, to which one will ultimately return. . . . Without attempting a complete definition of 'a temporary visit,' we may say that we think the intention of the departing immigrant must be to return within a period relatively short, fixed by some early event." 21 F.2d at 308–309. Four years later in *United States ex rel. Polymeris v. Trudell*, 49 F.2d 730 (2d Cir.1931), the court added that "[w]hat is a temporary visit cannot be defined in terms of elapsed time alone, when it is of such duration that its temporary character may reasonably be questioned. Then the intention of the visitor, when it can be determined, will control." 49 F.2d at 732.

▪ The Third Circuit embraced the *Lesto* standard in *United States ex rel. Alther v. McCandless*, 46 F.2d 288 (3d Cir.1931). The *Alther* court further noted that "under this rule the *animus revertendi* must exist as a positive element. A mere absence of intention to remain abroad permanently will not preserve the alien's . . . status. The burden of proof is still with the government and must be met by the production of substantial evidence, but if it appears that he left with no definite intention, either of staying permanently or of returning, merely planning to let future events determine his course, his stay would not be a temporary visit." 46 F.2d at 290–291. In complete accord, the Ninth Circuit has noted that "the Second Circuit's construction of the phrase 'temporary visit abroad' does not include within it all visits abroad that are simply 'not permanent,' and

we agree with the Second Circuit's approach. . . . If Congress had intended permanent residents to reenter the United States and retain their status after 'all visits abroad that are not permanent,' it could have done so." *Chavez–Ramirez*, 792 F.2d at 936. Accordingly, the Ninth Circuit held in *Chavez–Ramirez* that:

a permanent resident returns from a "temporary visit abroad" only when (a) the permanent resident's visit is for "a period relatively short, fixed by some early event," or (b) the permanent resident's visit will terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time. If as in (b), the length of the visit is contingent upon the occurrence of an event and is not fixed in time and if the event does not occur within a relatively short period of time, the visit will be considered a "temporary visit abroad" only if the alien has a continuous, uninterrupted intention to return to the United States during the entirety of his visit.

792 F.2d at 936–937 (footnotes omitted). To ascertain the alien's intent, courts may look—in addition to his or her testimony—to such factors as the alien's familial, financial, business and professional ties to the United States and foreign countries, as well as any relevant conduct while abroad. *Id.* at 937. Guided by these standards, we turn to the facts of this case.

▪ The record is quite clear that the Aleems left the United States in 1984 because of mounting debt and Mr. Aleem's inability to find suitable employment. He found that employment in Bahrain, and when he left the States in 1984 he left no family here, he left no real or personal property here, and he had no significant business ties to the United States. At the time that the exclusion proceedings were initiated in this case, the Aleems had been in Bahrain for approximately five years and intended to return so that Mr. Aleem could continue teaching under the terms of a contract that had been extended for a third time. This evidence substantially supports the Board's conclusion that, "it appears that the applicant's employment with the University of Bahrain

would continue as long as he wished to remain there. . . . It appears that the applicant intended to work indefinitely with the University of Bahrain, as long as the employment was available." Certified Administrative Record at 6. While Mr. Aleem's employment with the University of Bahrain might not have been "permanent," that is not the pertinent inquiry. *Chavez–Ramirez*, 792 F.2d at 936. His employment was plainly indefinite and not fixed by any early event. Against this backdrop of repeatedly renewing his teaching contract with the University of Bahrain, Mr. Aleem testified that he intended to return to the United States for good after serving out his fourth contractual term with the University. Absent any indication that Mr. Aleem's job prospects in the United States had changed, we find no fault with the Board's failure to credit this self-serving testimony.[5] Notwithstanding his professed intention to return, Mr. Aleem's course of conduct demonstrated that he had no definite plan to return but was "merely planning to let future events determine his course" and thus was not on a temporary visit. *Alther*, 46 F.2d at 291.

■ On appeal the Aleems argue that in fact they did have family ties to the United States by virtue of their children's U.S. citizenship. That is a rather strained claim in light of the fact that the Aleems possessed complete dominion and control over their children and they exercised that control to take the children away from the United States—not to foster the "educational, social and cultural benefits of this country," to which they refer in their brief. Appellant's Br. at 22. The Aleems argue that the Board and the district court "ignore[d] the realities of parenthood: parents make plans based on the needs of the children," *id.*; however, the record is devoid of any evidence that the Aleems actually made any such plans that involved returning to the United States. While the U.S. citizenship of the Aleem children may not be an entirely irrelevant consideration—for surely there may be circumstances in which an alien's

child's U.S. citizenship in conjunction with facts related to that citizenship does provide some evidence of the alien's intent to return to this country—on this record, the Aleem children's citizenship, standing alone, is simply not probative evidence.

■ The Aleems also point to Mr. Aleem's membership in a couple of professional organizations—namely, the Institute of Electrical and Electronics Engineers and the Software Maintenance Association—as important ties to the United States. This evidence is equally unavailing. Mr. Aleem's only testimony regarding his membership in these organizations was that they were extremely prestigious organizations (worldwide) and his membership would be beneficial to his job search *if* he was to return to this country. This hardly evidences a firm intent to return. At most, Mr. Aleem's testimony suggests that he was attempting to keep his options open. Entirely lacking was any testimony suggesting that membership in these organizations connected Mr. Aleem to the United States in any meaningful sense.

■ Finally, the Aleems urge that their filing of United States income tax returns while they were abroad reveals their intent to not abandon their lawful permanent resident status. In this regard, Mr. Aleem testified that he filed the returns because he felt it was his obligation as a permanent resident alien. There can be little doubt that the Aleems faithfully complied with what they perceived to be the minimum requirements for retaining their lawful permanent resident status. Indeed, that is why they traveled to the United States in 1989. The determinative inquiry, however, is not whether the Aleems desired to retain their permanent resident status, rather it is whether that status was lost because their stay in Bahrain cannot be deemed temporary. See *Matter of Kane*, 15 I & N Dec. 258 (BIA 1975) (alien's desire to maintain permanent resident status, as evidenced by her short return visits to

5. We note in this regard, as did the Board, that there is not a shred of evidence in the record, other than Mr. Aleem's say so, that he looked for work during any of his short visits to the United States.

maintain alien registration and receipt card, not sufficient to preserve status). In other words, it is not whether the Aleems sought to maintain their status but whether they held a continuous, uninterrupted intention to return to the United States. On this latter score, as set out above, substantial evidence supported the Board's determination that they did not.

For the foregoing reasons, the judgment of the district court denying the Aleems' petition for habeas corpus is AFFIRMED.