Abdulsallam Haddi AHMED,
Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE; John D. Ashcroft, Attorney General of the United States, Respondents.

No. 02–3748.

United States Court of Appeals,
Sixth Circuit.

Dec. 16, 2003.

Richard A. Kulics, Birmingham, MI, for Petitioner.

M. Jocelyn Wright, Ernesto H. Molina, Emily A. Radford, David V. Bernal, U.S. Department of Justice, Washington, DC, for Respondent.

Before KEITH, MARTIN, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Petitioner Abdulsallam Haddi Ahmed seeks review of an order by the Board of Immigration Appeals, which affirmed, without opinion, an immigration judge's decision denying petitioner's admission to the United States and ordering him removed to Yemen. Petitioner argues that (1) the Board's summary-affirmance order (and the administrative streamlining process that underlies it) violates the Due Process Clause of the Fifth Amendment to the United States Constitution and (2) the immigration judge's findings are unsup-ported by substantial evidence. We disagree on both accounts and, accordingly, deny the petition for review.

## I.

A native and citizen of Yemen, petitioner entered the United States in 1981 with lawful permanent resident status. JA 34–35; AR 64–65. When he chose to return to Yemen in 1984, he completed an "Application for Issuance of Permit to Reenter the United States," which stated that he intended to remain outside of the United States for approximately eight and one-half months to "visit [his] mother who [was] ill." JA 35; AR 65. The INS, in response, issued petitioner a multiple-entry reentry permit, which was valid for two years. JA 36; AR 66.

Rather than remain in Yemen for eight and one-half months (as he originally planned) or for two years (as his reentry permit allowed), petitioner stayed in Yemen for more than twelve years. JA 69, 71; AR 46, 48. Prior to 1986, when his reentry permit expired, petitioner had planned to return to the United States, but he met and married a woman who persuaded him to stay in Yemen. JA 74–75; AR 51–52. There, he remained after his mother died in 1987. JA 73; AR 50. There, his wife gave birth to their five children. JA 75; AR 52. And there, he continued to live and work until 1997, when his wife agreed to let him return to the United States to "make money," JA 77, AR 54, leaving the family behind, JA 80; AR 57.

When petitioner attempted to reenter the United States in 1997, he told INS officials that he had been gone for "[b]e-tween six or seven years." JA 78–79; AR 55–56. Petitioner later explained that he misrepresented the length of his absence because he "was afraid" that the INS would "send [him] back or put [him] in jail." JA 80; AR 57.

On April 12, 1999, following an evidentiary hearing, an immigration judge issued an oral decision ordering petitioner removed to Yemen. JA 8–11; AR 24–27. The immigration judge found that petitioner "had not maintained a residence in the United States since his departure in 1984," that he had established a residence in Yemen as evidenced by "his marriage and the subsequent birth of his five children," and that through it all he had abandoned his lawful permanent residence status in this country. JA 10; AR 26. The judge also found that petitioner "knowingly" misrepresented a material fact—the length of his absence—"with the idea of misleading [INS officials]" and "with an intent to deceive." JA 10; AR 26.

In accordance with the recently-promulgated "streamlining" regulation of the Board of Immigration Appeals, 8 C.F.R. § 1003.1(a)(7), a single member of the Board affirmed the immigration judge's decision without opinion, JA 5–6; AR 1–2. Petitioner now seeks review in this Court.

## II.

■ Petitioner first challenges the validity of the Board's new streamlining procedures. Because the procedures allow a single member of the Board summarily to affirm the immigration judge's decision, petitioner argues that they violate the Due Process Clause of the Fifth Amendment.

In his motion to waive oral argument in this case, petitioner conceded that our pending decision in *Denko v. INS*, 351 F.3d 717 (6th Cir.2003), would control the outcome of this challenge. In *Denko*, which has since been decided, we joined every circuit that has addressed the question, holding that the Board's streamlining procedures do not violate due process. *Id.* at 729–31; *see Carriche v. Ashcroft*, 350 F.3d 845, 850 (9th Cir.2003); *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir.2003);

*Mendoza v. United States Att'y Gen.*, 327 F.3d 1283, 1289 (11th Cir.2003); *Soadjede v. Ashcroft*, 324 F.3d 830, 832 (5th Cir. 2003); *Albathani v. INS*, 318 F.3d 365, 376–79 (1st Cir.2003). As we explained: It does not violate due process for a single Board member to affirm an immigration judge's decision without issuing an opinion because "[e]ven if the [Board] would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the [immigration judge's] decision the final agency order, and we review that decision." *Denko*, 351 F.3d at 730–31. Thus, even under the streamlining procedures, an alien "receives [a] 'full and fair' review" of the decision to remove him. *Id.* (quoting *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001)). For these reasons, we concluded that the streamlining procedures do not offend due process, which disposes of petitioner's due process challenge here. (Because petitioner does not challenge the Board's decision to invoke the streamlining procedures in his case–which the Government argues is an unreviewable decision committed to agency discretion–we need not address this separate question.)

■ Turning to the merits of the immigration judge's decision, petitioner argues that it is not supported by substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."); *id.* § 1252(b)(4)(C) ("[A] decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law."). We disagree.

The record adequately supports the immigration judge's finding that petitioner abandoned his permanent resident status. In 1997, petitioner was not a "returning

resident immigrant" entitled to be readmitted to the United States, 8 U.S.C. § 1181(b), because he was not "an immigrant, lawfully admitted for permanent residence ... returning from a temporary visit abroad," *id.* § 1101(a)(27)(A). *See* 8 C.F.R. § 211.1(b)(3) (providing for reentry without entry documents in cases of "an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad"). By any measure, petitioner's twelve years in Yemen indicate that he no longer had an unyielding intent to return to the United States after a temporary sojourn abroad. Petitioner lived and worked in Yemen, married in Yemen, established a home in Yemen, owned property in Yemen and had five children in Yemen. *See Aleem v. Perryman,* 114 F.3d 672, 677 (7th Cir.1997) ("To ascertain the alien's intent, courts may look ... to such factors as the alien's familial, financial, business and professional ties to the United States and foreign countries, as well as any relevant conduct while abroad"); *id.* at 678 ("Notwithstanding his professed intention to return, Mr. Aleem's course of conduct demonstrated that he had no definite plan to return but was merely planning to let future events determine his course and thus was not on a temporary visit.") (quotation omitted). Most tellingly, petitioner remained in Yemen *ten years* after his mother–the person whom he had left the United States to visit in 1984–had passed away. *See Chavez–Ramirez v. INS,* 792 F.2d 932, 936–37 (9th Cir.1986) ("[A] permanent resident returns from a 'temporary visit abroad' only when (a) the permanent resident's visit is for 'a period relatively short, fixed by some early event,' or (b) the permanent resident's visit will terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time.") (footnotes omitted).

Compared to his substantial ties to Yemen, petitioner's connections to the United States seem minimal. Although his father and three siblings live in this country, he resided here for only three years in the early 1980s, he owns no real or personal property here, and he filed no tax returns in the United States before 1997. JA 71; AR 48. In short, the record lends substantial support–indeed, compelling support–to the immigration judge's finding that petitioner abandoned his permanent resident status during his twelve years abroad. *See Ahmed v. Ashcroft,* 286 F.3d 611, 613 (2d Cir.2002) (holding that a native of Yemen abandoned his permanent resident status as a result of a nine-year absence during which he lived and worked in Bahrain and established family, property and business ties to Yemen).

Because we conclude that the record substantially supports the immigration judge's finding that petitioner abandoned his permanent resident status, we need not address the immigration judge's alternative ground for ordering petitioner's removal–that petitioner misrepresented the length of his absence to immigration officials.

### III.

For the foregoing reasons, we deny the petition for review.