# United States Court of Appeals
## For the First Circuit

No. 03-2550

FARHAD KATEBI,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lipez and Howard, <u>Circuit Judges</u>.

<u>Harvey Kaplan</u> with whom <u>Maureen O'Sullivan</u>, <u>Jeremiah Friedman</u>, <u>Ilana Greenstein</u>, and <u>Kaplan, O'Sullivan & Friedman, LLP</u> were on brief, for petitioner.
<u>Greg D. Mack</u>, Senior Litigation Counsel, Office of Immigration Litigation, with whom <u>Peter D. Keisler</u>, Assistant Attorney General and <u>Donald E. Keener</u>, Deputy Director, were on brief, for respondent.

February 3, 2005

**HOWARD**, <u>**Circuit Judge**</u>.  This petition for review of an order of the Board of Immigration Appeals ("BIA") requires us to consider under what circumstances a permanent resident may be excluded from the United States for abandoning his permanent resident status.  An immigration judge ("IJ") found that petitioner Farhad Katebi abandoned his permanent resident status by traveling to Iran and Canada.  The BIA summarily affirmed.  We deny Katebi's petition for review.

Katebi, a native and citizen of Iran, arrived in Canada in 1989 as a landed immigrant.  In 1990, Katebi's father, a permanent resident of the United States, sponsored Katebi for permanent resident status in this country.  <u>See</u> 8 U.S.C. § 1153(a)(2)(B).  Katebi's permanent resident application was not approved until early 1995.  Meanwhile, in 1993, Katebi applied for Canadian citizenship.

Katebi entered the United States as a permanent resident on January 5, 1995.  He moved from Canada to Florida where he lived with one of his brothers (who is a U.S. citizen) and worked as a security guard. Katebi returned to Canada in March of 1995 and received Canadian citizenship sometime in 1996.  After receiving citizenship, Katebi remained in Canada for several more months to await the issuance of his passport, which he received at some point in 1997.  While in Canada, Katebi lived in an apartment with his girlfriend, worked as a taxi driver, maintained a Canadian bank

account, and purchased and registered a car.  He remained in Canada for several months after receiving the passport.

Meanwhile, Katebi's father had returned to Iran from the United States and become gravely ill.  In October 1997, Katebi traveled to Iran to visit his father.  He stayed in Iran for two months.  After leaving, he initially went to Canada to retrieve his car before returning to the United States in mid-January 1998.  Upon returning to the United States, Katebi moved to the Boston, Massachusetts area.  Once settled in Massachusetts, he worked as a taxi driver.

In October 1998, Katebi's father died, and Katebi returned to Iran to attend the funeral.  He returned to Boston in late February 1999 and was interviewed by Immigration and Naturalization Service ("INS") agents at Logan Airport.  The agents concluded that Katebi had abandoned his permanent resident status.[1] They permitted him to enter the United States but did not formally admit him.  The INS subsequently placed him in exclusion proceedings.

At the conclusion of these proceedings, an IJ ordered Katebi removed to Canada because he had abandoned his lawful

---

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice.  Its enforcement functions were transferred to the Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). Because the events at issue here predate that reorganization, we refer to the INS in this opinion.

permanent resident status in the United States. The IJ based his abandonment ruling on three independent grounds: (1) Katebi's trips to Iran; (2) his conduct after returning to Canada in March of 1995; and (3) his becoming a Canadian citizen. The BIA summarily affirmed the IJ's order. Because there is substantial evidence to support the IJ's second ground of decision, we confine our discussion to that basis.

Where, as here, the BIA summarily affirms the IJ's decision, we review the IJ's decision directly. See Quevedo v. Ashcroft, 336 F.3d 39, 43 (1st Cir. 2003). Because we face the fact-intensive question of whether Katebi abandoned his permanent residence status, we review the IJ's decision under the substantial evidence test. See Khodagholian v. Ashcroft, 335 F.3d 1003, 1006 (9th Cir. 2003); Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003). Substantial evidence exists if the IJ's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

We have not previously considered a case concerning the abandonment of permanent resident status; however, other circuits have addressed the governing legal framework. Returning permanent residents are permitted to reenter the country after foreign travel. See Aleem v. Perryman, 114 F.3d 672, 676 (7th Cir. 1997). To qualify as a returning permanent resident, the resident "must have

-4-

acquired lawful permanent resident status . . ., must have retained that status from the time that [he] acquired it, and must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." Moin, 335 F.3d at 418 (quoting Matter of Huang, 19 I. & N. Dec. 749, 753 (BIA 1988)). If, however, the resident is not returning from "a temporary visit abroad," he will be deemed to have abandoned permanent resident status and be excluded from the United States. See Aleem, 114 F.3d at 676. Therefore, the determinative question is whether Katebi's trips constitute "temporary visits abroad."

While the term "temporary visit abroad" is "inherently nebulous," id. at 677 (internal citations omitted), there is general agreement that

> a permanent resident returns from a temporary visit abroad only when (a) the permanent resident's visit is for a period relatively short, fixed by some early event, or (b) the permanent resident's visit will terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time. If as in (b), the length of the visit is contingent upon the occurrence of an event and is not fixed in time and if the event does not occur within a relatively short period of time, the visit will be considered a temporary visit abroad only if the alien has a continuous, uninterrupted intention to return to the United States during the entirety of his visit.

Chavez-Ramirez v. INS, 792 F.2d 932, 936-37 (9th Cir. 1986) (internal quotations and citations omitted); see also Khodagholian,

-5-

335 F.3d at 1006-07; Aleem, 114 F.3d at 677. Ultimately, the issue is one of intent. See Ahmed v. Ashcroft, 286 F.3d 611, 613 (2d Cir. 2002) (per curiam) (citing United States ex rel. Polymeris v. Trudell, 49 F.2d 730, 732 (2d Cir. 1931)). "The relevant intent is not the intent to return ultimately, but the intent to return to the United States within a relatively short period of time." Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997). Nonetheless, "what is a temporary visit cannot be defined in terms of elapsed time alone." Aleem, 114 F.3d at 677 (quoting Trudell, 49 F.2d at 732). In other words, a returning resident does not necessarily abandon his status if he extends his trip beyond a relatively short period; the key remains whether his activities are consistent with an intent to return to the United States as soon as practicable. See Singh, 113 F.3d at 1514.

Factors to be considered in evaluating the alien's intent include the alien's family ties, property holdings, and business affiliations within the United States, and the alien's family, property, and business ties in the foreign country. See Moin, 335 F.3d at 419. An applicant's desire to maintain his permanent resident status, without more, is insufficient; the alien's intent must be supported by his actions. See Singh, 113 F.3d at 1514-15.

The IJ concluded that Katebi's actions, commencing with his return to Canada in March of 1995, indicated his intent to abandon his permanent resident status in the United States in favor

-6-

of residence in Canada. Applying the factors mentioned above and the substantial evidence standard, we cannot disturb the IJ's conclusion.

Between 1995 and 1998, Katebi's ties to the United States were minimal. He came to the United States in January 1995 after receiving permanent resident status. But after obtaining this status, Katebi stayed in the United States for fewer than three months. During that time, he lived in Florida and worked briefly as a security guard. Other than this brief period of employment, Katebi did not work in the United States between 1995 and 1998. He owned no property and did not pay taxes in 1996 and 1997. Katebi does have two brothers who are United States citizens, but he testified that he rarely saw them.

By contrast, after returning to Canada in March 1995, Katebi established (or more likely resumed) significant ties with that country.[2] He rented an apartment where he lived with his girlfriend; he worked as a taxi cab driver; he maintained a bank account; he purchased and registered a car; and he continued to pursue his Canadian citizenship application. In short, the evidence supports the view that Katebi's stay in Canada was more consistent with him resuming his prior residency than with him making a "temporary visit."

---

[2]Up to this point, Katebi had lived in Canada continuously since 1989, except for the fewer than three months that he had lived in the United States.

Katebi contends that his actions in Canada do not indicate his intent to abandon his permanent resident status in the United States because he was only there to await the granting of his Canadian citizenship application and to obtain a passport. This argument is unpersuasive for several reasons. First, proof that Katebi was actively pursuing more favorable immigration status in Canada could be considered itself suggestive of Katebi's ultimate intent to abandon his permanent resident status in the United States in favor of residency in Canada. See In re Ruiz-Barba, 13 Immig. Rptr. B1-9 (BIA 1995). Second, Katebi has not demonstrated that it was necessary that he be present in Canada for the processing of his citizenship or passport applications.[3] Finally, even after gaining Canadian citizenship and obtaining the passport, Katebi lived for several additional months in Canada before leaving for Iran because of a family emergency. The IJ was permitted to find that at least from the point that he received his passport, Katebi had no reason to stay in Canada other than the desire to reside there.

To be sure, the record could support a finding that,

---

[3]The INS has suggested that Katebi had to be in Canada because Canadian law required him to maintain Canadian permanent residency in order to obtain citizenship. Katebi did not challenge this interpretation of Canadian law before the IJ. We do not decide whether Canadian law actually required Katebi to maintain permanent residency during the pendency of his citizenship application. We note only that his actions were consistent with such a requirement and inconsistent with characterizing his stay as a "temporary visit."

beginning in 1998, Katebi decided that he wanted to live permanently in the United States.  But this evidence does not undermine the IJ's conclusion that Katebi had previously abandoned his permanent resident status in the United States.

**Petition denied**.